UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



LUIS GOMEZ,

              Plaintiff,

       -against-

SHINE SERVICES LLC, et al.

              Defendants.

20-CV-4190 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

Plaintiff Luiz Gomez, employed as a building superintendent from May 2017 through April 2020, has settled his Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) claims against defendants Shine Services LLC, Firstservice Residential New York, Inc., 604 West 178th Corp., and Ramesh Sarva. In his complaint, plaintiff alleges that he was not paid any cash wages, in violation of the FLSA and the NYLL, and was compensated only with a free apartment in the building where he worked (which was not a legal apartment under New York law); that he was not paid overtime wages, despite working approximately 46½ hours per week, in violation of the FLSA; and that he was not given any wage notice or wage statements, in violation of the NYLL. By letter dated February 11, 2021 (Joint Ltr.) (Dkt. No. 36), submitted by plaintiff with the consent of defendants, the parties seek the Court's approval of their settlement agreement (Agreement) (Dkt. No. 36-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). For the reasons set forth below, the application must be denied, without prejudice to renewal.

<u>**Economic Terms**</u>

The Agreement requires defendants to pay a total of $27,500 to resolve the parties' dispute. Ag. ¶ 1(a). Of that sum, $17,835.73 will go to plaintiff himself (including $3,333.33 which the parties characterize as a "Move-Out Payment" in consideration for plaintiff's agreement to vacate

his apartment), *id.* ¶¶ 1(a)(i), (a)(ii), (a)(iii), (c), (d), and (e); and $9,664.27 will go to his counsel, Samuel & Stein, for their fees ($8,917.87) and reimbursement of expenses ($746.40). *Id.* ¶¶ 1(a)(iv), (f); Joint Ltr. at 4. While the aggregate settlement amount of $27,500 represents only 23% of plaintiff's maximum possible recovery, it is significantly more than the $7,000 in "actual and liquidated overtime damages" that he would be awarded at trial if he were successful on his overtime claim but unable to prove that he was not paid any cash wages. Joint Ltr. at 2.[1] Given the litigation risks that plaintiff would face at trial with respect to his minimum wage claim, the Court finds the settlement amount reasonable

The proposed attorney's fee award (one-third of the aggregate settlement, net of costs) is also fair and reasonable, as required by *Cheeks*, 796 F.3d at 199, because it is consistent with the contingency fee agreement signed by the plaintiff, *see* Joint Ltr. at 4, and is only approximately $500 higher than counsel's lodestar, assuming hourly rates of $400 (in the case of Senior Partner David Stein) and $325 (in the case of Senior Partner David Nieporent).

## Non-Economic Terms

The Agreement does not include any confidentiality provision.  It does contain mutual non-disparagement clauses, which include carve-outs for truthful statements. Ag. ¶¶ 9(a), (b). Because

---

[1] Plaintiff calculates his maximum total recovery at trial to be $121,000, including $104,000 in "actual and liquidated minimum wage damages," $7,000 in "actual and liquidated overtime damages," and $10,000 for defendants' failure to provide a wage notice or wage statements. Joint Ltr. at 2. The parties report that the minimum wage damages are substantially in doubt because defendants produced cancelled checks "that suggested that in fact Mr. Gomez had been regularly paid wages by defendants." *Id.* Although plaintiff denied receiving or endorsing the checks – raising the possibility that they were endorsed and cashed by someone else – he concedes that it would be a "challenge," under the circumstances, to establish his entitlement to liquidated damages, particularly because "there was no documentary evidence that Mr. Gomez had brought his lack of wages to the defendants' attention for at least the first two years of his employment." *Id.* Plaintiff further concedes that it is "possible that defendants would be entitled to full credit for the wages." *Id.* Additionally, there are "no time records" regarding plaintiff's alleged overtime hours. *Id.*

of the carve-outs, the Court finds the non-disparagement clauses acceptable. *See Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *4 (S.D.N.Y. June 22, 2016) (Moses, M.J.) (non-disparagement clause "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [his] case") (internal quotation marks omitted; modifications in original). Nor is there anything inherently unreasonable about the requirement that plaintiff move out of the building in which he worked and resided. Ag. ¶ 3(a). As noted above, $3,333.33 of the settlement payment is characterized as consideration for that move, Ag. ¶¶ 1(a)(iii), 1(e), 3(c), but will be distributed, along with the remainder of the settlement funds, only after receipt of this Court's order approving the Agreement. *Id*. ¶ 1(b).[2]

However, the Court cannot approve the overbroad, one-way releases contained in the Agreement, of which there are two. Ag. ¶¶ 2(a), 3(c). Both purport to release not only the defendants but also "their past, present, and future predecessors, successors, assigns, parents, subsidiaries, affiliates, divisions, officers, trustees, directors, shareholders, members, partners, employees, agents, heirs, administrators, executors, representatives, insurers, reinsurers, business managers, accountants, attorneys, in their individual and representative capacities, and all persons acting by, through, and under, or in concert with any of these" (the "Releasees"). *Id.* I have previously explained that similar language, designed to extend the benefit of a release well beyond the settling defendants, cannot be approved as fair and reasonable to an FLSA plaintiff – even when used in connection with an otherwise-acceptable release – because such language could be "applied to absurd effect" to bar future claims against a wide range of unknown and unidentifiable persons and entities having no real connection to the case being settled (including, in this case,

---

[2] The Agreement required plaintiff to move out by February 15, 2021, which was only four days after the Agreement was first submitted to the Court for approval under *Cheeks*.

defendants' "past" and "future" officers, business managers, accountants, and attorneys, in their "individual" capacities). *See*, *e.g.*, *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (Moses, M.J.) (a "broad and sweeping general release . . . under which plaintiffs release defendants, together with a long list of related entities and persons," went "beyond what the law permits"); *Souffrant v. 14-15 Mertens Place Corp.*, 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (Moses, M.J.) (rejecting seemingly mutual releases where plaintiff's release "appear[ed] to extend to numerous persons and entities only tenuously connected to this action, and purport[s] to release them not only from claims arising out of that connection but also from wholly unrelated claims"); *Lara v. Air Sea Land Shipping & Moving Inc.*, 2019 WL 6117588, at *2 (S.D.N.Y. Nov. 18, 2019) (Moses, M.J.) (rejecting one-way release which was "substantively narrow," extending only to the claims that plaintiff alleged in the Complaint, but "when combined with the broad definition of 'Releasees' . . . would have the undoubtedly unintended effect of releasing any wage and hour claims that plaintiff had against a wide range of unidentified individuals and business only tenuously affiliated with defendant"); *Miglis v. Bed Bath & Beyond, Inc.*, 2019 WL 10890146, at *2 (S.D.N.Y. Mar. 26, 2019) (Moses, M.J.) (rejecting release that extended "beyond the wage and hour claims being settled," ran "only in favor of defendant," and included an "overly broad" definition of the "releasees").

For this reason alone, the releases in the Agreement now before me go "beyond what the law permits" in an FLSA settlement. *Lopez*, 176 F. Supp. 3d at 344. But the overbroad definition of "releasees" is not the only difficulty. While the first release (given in consideration for all of the settlement payments listed in ¶ 1) is limited to "any claim regarding unpaid or improperly paid wages," Ag. ¶ 2(a), it goes on to include, as if they were wage claims, "any and all claims for violation of any written or unwritten contract, agreement, understanding, policy, benefit,

4

retirement or pension plan, severance plan, or covenant of any kind." *Id.* ¶ 2(a)(f). By its terms, ¶ 2(a)(f) would appear to release, for example, pension claims brought under ERISA, never pleaded or litigated in this action. The second release (given in consideration for the $3,333.33 "Move-Out Payment"), goes even farther, exculpating the "Releasees" from "any claim regarding the termination of [plaintiff's] employment, including but not limited to claims for retaliatory discharge in violation of the federal and state wage and hour laws." Ag. ¶ 3(c). By its terms, ¶ 3(c) would appear to release, for example, claims brought under federal, state, or local discrimination laws, never pleaded or litigated in this action.

There is no release of any kind running from defendant to plaintiff.

Even apart from the overbroad definition of the "Releasees," these provisions go beyond that which the Court could approve as fair and reasonable under *Cheeks* because they (a) are unilateral and (b) purport to release "unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (rejecting general release going beyond the wage and hour claims being settled). Even if subsection (f) were excised from ¶ 2(a), limiting that release to wage and hour claims, the limitation would be "illusory" so long as ¶ 3(c) – nominally linked to plaintiff's agreement to vacate his apartment rather than his dismissal of his FLSA claims, but "functionally controlling as between the two," *Torres v. Mc Gowan Builders*, 2020 WL 5369056, at *3 (E.D.N.Y. Sept. 8, 2020) – releases "claims that would be impermissible to release in the FLSA settlement agreement." *Id.* at *2-3 (denying approval of "bifurcated" settlement, memorialized in two separate agreements, where the non-FLSA agreement contained "several provisions that would be impermissible if included in the FLSA settlement agreement," including "a general release of claims" not limited to wage and hour claims); *see also Bazile v. Asset Protection Grp. LLC*, 2019

WL 7985168, at *3 (E.D.N.Y. Nov. 27, 2019) ("A plaintiff who executes a FLSA settlement containing a limited release, while simultaneously executing a NYLL settlement containing a general release, has not in fact received a limited release.").

"In the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers," such releases are impermissible. *Nights of Cabiria*, 96 F. Supp. 3d at 181; *see also Cheeks*, 796 F.3d at 206 (citing the overbroad release described in *Nights of Cabiria* as an example of the "potential for abuse" in FLSA settlements); *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) ("Consistent with the case authority in this area, the Court will not approve a release provision that extends beyond the claims at issue in this action.") (internal quotation marks, alterations, and citation omitted); *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) (rejecting release that required the plaintiff to "waive essentially all claims that may have arisen out of his employment with Defendants" and holding that "any release provision must be limited to the claims at issue in the action").

"Judicial disfavor of broad releases is especially pronounced . . . where 'the releases were not mutual and protected only the defendants.'" *Weng*, 2016 WL 3566849, at *5 (quoting *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)). Thus, while some judges within our district – including the undersigned magistrate judge – have approved general releases in the context of an FLSA settlement, they have done so only where the settling plaintiff was no longer an employee of the defendant, thus "eliminating the danger that the release was obtained through improper job-related pressure," *Plizga v. Little Poland Rest. Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016), *and* where the releases were *mutual*. *Id.*; *see also, e.g., Weng*, 2016 WL 3566849, at *5 ("This case involves mutual general releases, negotiated

by competent counsel for both sides, releasing both plaintiffs and defendants from liability for most claims each might have against the other up to the date the Agreement is signed."); *Lola*, 2016 WL 922223, at *2 (approving broad releases after noting that they were mutual, thus "assuaging concerns that the waiver unfairly benefits only Defendants"); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015) ("A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes. It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation. This result is consistent with the goals of a fair and just settlement."). In this case, however, the proposed releases are one-sided, extend beyond wage and hour claims, and are further broadened by the expansive definitions of "releasees," discussed above. Consequently, they are not fair and reasonable to the plaintiff and cannot be approved under *Cheeks*.

The Agreement also contains a no-rehire clause, which states that plaintiff "will never apply for or accept employment or an independent contractor position with any of the Defendants or any of their affiliates, parent companies, subsidiaries, related entities, or successors." Ag. ¶ 10. Such provisions are "highly restrictive" and in "strong tension with the remedial purposes of the FLSA." *See Martinez Aguilar v. VBFS Inc.*, 2020 WL 1036071, at *1 (S.D.N.Y. Mar. 3, 2020) (quoting *Baikin v. Leader Sheet Metal, Inc.*, 2017 WL 1025991, at *1 (S.D.N.Y. Mar. 13, 2017)). Courts are particularly hostile to such clauses where the parties have failed to offer "a shred of explanation . . . to justify inclusion of this provision." *Id.*; *accord Nieto v. Izzo Constr. Corp.*, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018).

In this case, the parties state that "defendants had previously expressed concerns about the performance of Mr. Gomez's duties," adding that the no-rehire provision would not present a

"significant hardship to plaintiff, because it does not restrict him from practicing his primary profession," which is construction. Joint Ltr. at 6. This might be sufficient justification for a no-rehire provision limited to the named defendants. Here, however, plaintiff would be barred from applying for a job with any of defendants' "related entities" (an undefined term), which could expose him to liability – including liability for defendants' legal fees – simply for submitting a job application to a potential employer that turned out to be "related" to one of the named defendants. *See* Ag. ¶ 11 (c) (prevailing party in litigation over breach of Agreement to recover its reasonable attorneys' fees "in addition to any other relief a Court deems just and proper"). As written, therefore, the no-rehire clause also prevents the Court from approving the Agreement as fair and reasonable to the plaintiff.

## Conclusion

For these reasons, the parties' letter-application for approval of their settlement (Dkt. No. 36) is DENIED without prejudice to renewal. Any revised agreement (or appropriate addendum thereto) shall be submitted pursuant to *Cheeks* no later than **May 4, 2021.**

Dated: New York, New York
        April 13, 2021                                    **SO ORDERED**.

                                                          **BARBARA MOSES**
                                                          **United States Magistrate Judge**